[No. B209404. Second Dist., Div. Four. July 9, 2009.]

EUGENE MAYSTRUK, Plaintiff and Appellant, v.
INFINITY INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Kingsley & Kingsley, George R. Kingsley, Brian Levine and Eric Kingsley for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Frances T. Grunder, Assistant Attorney General, Kathrin Sears and Paul Stein, Deputy Attorneys General, for State of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Harvey Rosenfield, Pamela Pressley and Todd M. Foreman for Consumer Watchdog as Amicus Curiae on behalf of Plaintiff and Appellant.

Luce, Forward, Hamilton & Scripps, Peter H. Klee and John T. Brooks for Defendant and Respondent.

**OPINION**

**SUZUKAWA, J.**—This lawsuit concerns Insurance Code section 758.5 (section 758.5), which applies to vehicle repairs performed at a repair shop chosen by the insured. Plaintiff Eugene Maystruk[1] sued defendant Infinity Insurance Company (Infinity) for allegedly violating subdivision (d)(2) of section 758.5, which states that if the insured "elects to have the vehicle repaired at the shop of his or her choice, the insurer shall not limit or discount the reasonable repair costs based on charges that would have been incurred had the vehicle been repaired by the insurer's chosen shop." The parties disagree as to whether Infinity's vehicle repair policy violates subdivision (d)(2) by providing two tiers of coverage: (1) 100 percent coverage for reasonable costs incurred at a facility selected by the insurer; but (2) only 80 percent coverage for reasonable costs incurred at a facility selected by the insured.[2]

---

[1] The notice of appeal lists plaintiff's wife, Irina Maystruk, who is not named in the complaint, as an additional appellant. Infinity requests in its respondent's brief that we dismiss the appeal as to Irina for lack of standing. Given the reply brief's silence on this issue, we conclude that because Irina is not a party to this litigation, she lacks standing to appeal.

[2] Throughout this opinion, it is assumed that the insured must pay a deductible before receiving any benefits under the policy.

The trial court dismissed the complaint after sustaining Infinity's demurrer without leave to amend. Plaintiff has appealed from the judgment on the grounds that (1) the complaint sufficiently alleged or can be amended to allege a violation of section 758.5, subdivision (d)(2); and (2) the alleged statutory violation supports a claim under the unfair competition law (Bus. & Prof. Code, § 17200 et seq. (UCL)). In light of our rejection of the first contention, we need not reach the second. The judgment is affirmed.

## BACKGROUND

Infinity issued plaintiff an " 'RSVP' (Repair Satisfaction Vehicle Program) Physical Damage Only Policy" (the policy), which contains the following limitation of coverage clause: "*If . . . you choose to utilize a repair facility which is not a RSVP Shop, we will pay Eighty percent (80%) of the fair and responsible charges from that repair facility.*" The policy lists 80 affiliated repair shops, called "RSVP shops,"[3] that are exempt from the limitation of coverage clause. Of the 80 RSVP shops listed in the policy, 18 are located in the Los Angeles area where plaintiff resides.

When plaintiff's vehicle was damaged in an automobile accident, he filed a claim with Infinity and had the vehicle repaired at a non-RSVP shop of his choice. Infinity inspected plaintiff's vehicle and approved the reasonable repair costs, which were discounted by 20 percent in accordance with the policy's limitation of coverage clause.

On October 26, 2007, plaintiff filed a purported class action complaint against Infinity based on the theory that the policy's limitation of coverage clause violates subdivision (d)(2) of section 758.5. Plaintiff filed the lawsuit on behalf of himself and a class of California plaintiffs who meet the following conditions: (1) plaintiffs were covered during a specified time period under the policy; (2) plaintiffs suffered covered losses to their vehicles; (3) plaintiffs had their vehicles repaired at the non-RSVP shops of their choice; and (4) due to the policy's limitation of coverage clause, plaintiffs received coverage for only 80 percent of the reasonable repair costs.

Based on the theory that the policy's limitation of coverage clause violates subdivision (d)(2) of section 758.5,[4] the complaint requested the following

---

[3] The policy defined an RSVP shop as "an automobile repair shop which has contracted with us to do repairs on your vehicle."

[4] Section 758.5, subdivision (d) provides: "(d) Any insurer that, by the insurance contract, suggests or recommends that an automobile be repaired at a particular automotive repair dealer shall also do both of the following: [¶] (1) Prominently disclose the contractual provision in writing to the insured at the time the insurance is applied for and at the time the claim is acknowledged by the insurer. [¶] (2) *If the claimant elects to have the vehicle repaired at the*

relief: (1) compensatory damages for violation of section 758.5 (first cause of action); (2) punitive damages for breach of the implied covenant of good faith and fair dealing (second cause of action); and (3) restitution, disgorgement of profits, and injunctive relief for violation of the UCL (third cause of action). On April 4, 2008, plaintiff amended the complaint to add a fourth cause of action under a theory of unjust enrichment.

Infinity demurred to the first amended complaint on the ground that the policy's limitation of coverage clause does not violate section 758.5. Infinity argued that it is free to contract with its insureds for two tiers of coverage and that nothing in section 758.5 requires that it pay 100 percent of all reasonable repair costs in excess of the deductible. Infinity contended that section 758.5 allows it to provide a reduced rate of coverage for repairs performed at non-RSVP shops, provided that the reduction is not tied to the amount that would have been charged by an RSVP repair shop. Infinity asserted that because the policy's limitation of coverage was not "based on charges that would have been incurred had the vehicle been repaired by the insurer's chosen shop" (§ 758.5, subd. (d)(2)), there was no statutory violation.[5]

In opposition to the demurrer, plaintiff argued in relevant part that the policy's limitation of coverage clause violates both the "express language" and the "clear intent" of section 758.5. Plaintiff contended that because the statute requires Infinity to pay 100 percent of all reasonable repair costs, the "discounts beyond the reasonable repair costs [are] a per se violation of the bill's express language, as well as its clear intent. The insurer must pay the prescribed coverage level, in this case 100%, of the *reasonable costs of*

---

*shop of his or her choice, the insurer shall not limit or discount the reasonable repair costs based on charges that would have been incurred had the vehicle been repaired by the insurer's chosen shop.*" (Italics added.)

[5] Infinity additionally demurred to the complaint on grounds that (1) the first cause of action for violation of section 758.5 must fail because there is no private right of action under section 758.5; (2) the second cause of action for breach of the implied covenant claim must fail because the implied covenant does not prohibit conduct expressly allowed by the contract; (3) the third cause of action for violation of the UCL must fail because section 758.5 does not support a claim under the UCL (citing *Textron Financial Corp. v. National Union Fire Ins. Co.* (2004) 118 Cal.App.4th 1061, 1070 [13 Cal.Rptr.3d 586]; *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58]); and (4) the unjust enrichment claim must fail because there is no such cause of action in California (citing *Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793 [131 Cal.Rptr.2d 347]; *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1490 [49 Cal.Rptr.3d 227]; *Lauriedale Associates, Ltd. v. Wilson* (1992) 7 Cal.App.4th 1439, 1448 [9 Cal.Rptr.2d 774]). In light of our resolution of the appeal on other grounds, we need not discuss these issues.

*repair*, less the deductible." Plaintiff further reasoned that because the reduced rate of coverage violates section 758.5, the statutory violation provides the basis for a claim under the "unlawful" prong of the UCL. Plaintiff pointed out that "virtually any law can serve as a predicate for a claim of unfair competition, under the unlawful prong, including a regulatory statute. *Express, LLC v. Fetish Group, Inc.*, 464 F.Supp.2d 965 (C.D. Cal. 2006)."

The trial court rejected plaintiff's arguments and sustained the demurrer to the entire complaint without leave to amend. As relevant to this appeal, the trial court held that (1) the first cause of action for violation of section 758.5 must fail because the limitation of coverage clause is not based on the amount that would have been charged by an RSVP shop and, therefore, does not violate the statute; and (2) the third cause of action for violation of the UCL must fail because "there is no illegality on which to base the [UCL] claim because there was no statutory violation."[6] The trial court denied leave to amend on the ground that an amendment would be futile in light of plaintiff's failure to establish the existence of facts sufficient to state a cause of action.

The trial court entered a judgment of dismissal on June 25, 2008. Plaintiff has timely appealed from the judgment.

## DISCUSSION

### I. *Standard of Review*

" 'In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable

---

[6] Additionally, the trial court held that (1) the first cause of action for violation of section 758.5 must fail because there is no private right of action under the statute; (2) the second cause of action for breach of the implied covenant must fail because the limitation of coverage clause does not violate section 758.5 and, alternatively, the implied covenant does not prohibit what is expressly allowed under the contract; (3) the third cause of action for violation of the UCL must fail because the alleged violation of section 758.5 does not support a UCL claim (citing *Textron Financial Corp. v. National Union Fire Ins. Co., supra*, 118 Cal.App.4th 1061, 1070); and (4) the fourth cause of action for unjust enrichment must fail because "[a] quasi-contractual recovery based on unjust enrichment is inappropriate where, as here, express binding agreements exist and define the parties' rights. *(Cal. Med. Assn. v. Aetna U.S. Healthcare of Cal., Inc.* [(2001)] 94 Cal.App.4th 151, 172 [114 Cal.Rptr.2d 109].)"

interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) 'To meet [the] burden of showing abuse of discretion, the plaintiff must show how the complaint can be amended to state a cause of action. [Citation.] However, such a showing need not be made in the trial court so long as it is made to the reviewing court.' (*William S. Hart Union High School Dist. v. Regional Planning Com.* (1991) 226 Cal.App.3d 1612, 1621 [277 Cal.Rptr. 645].) '[W]e may affirm a trial court judgment on any basis presented by the record whether or not relied upon by the trial court.' (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252, fn. 1 [119 Cal.Rptr.2d 606].)" (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 999 [24 Cal.Rptr.3d 474].)

II. *Section 758.5 Does Not Require 100 Percent Coverage of Reasonable Repair Costs*

Plaintiff contends, as he did below, that section 758.5 requires insurers to pay 100 percent of the reasonable repair costs incurred at any facility of the insured's choice. In support of this contention, plaintiff argues that the legislative intent in enacting section 758.5 was to prohibit insurers from steering insureds to particular repair shops by requiring insurers to "pay the cost of repair charged by the insured's chosen shop without discount, if the amount charged for the repairs is reasonable. The prohibition is intended to prevent insurance companies from using 'coercive tactics to illegally "steer" consumers to particular body shops or dissuade consumers from using their own chosen shops.' (Excerpt from the Insurance Commissioner's Legislative Analyst Endorsing Section 758.5.) [¶] Infinity's 'R.S.V.P.' policy is coercive and has the effect of 'steering' consumers to certain body shops—those that Infinity designates as R.S.V.P. If an insured uses an R.S.V.P. shop, then Infinity will not discount its coverage. But if the insured elects to use a non-R.S.V.P. shop to make the repairs, then Infinity discounts the coverage by 20%. So while insureds may prefer a particular repair shop, the insured[s] will forgo the right to cho[o]se their own shop, and instead choose Infinity's recommended shop to avoid the 20% reduction in coverage."

■ Based on the assumption that section 758.5 requires insurers to pay 100 percent of the reasonable repair costs incurred at a facility of the insured's choice, plaintiff contends that insurers may not impose "a flat reduction of coverage" based solely on the insured's selection of a non-RSVP shop. Plaintiff asserts that "[i]t is precisely this type of discounting that Section 758.5 makes unlawful." We are not persuaded, however, that the statute prohibits the two tiers of coverage that are at issue in this case.

■ Under the plain meaning rule of statutory construction, we must first examine the language of section 758.5. " 'As with any statutory construction inquiry, we must look first to the language of the statute. "To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent." [Citation.] If it is clear and unambiguous our inquiry ends. There is no need for judicial construction and a court may not indulge in it. [Citation.] "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." [Citation.]' (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539].)" (*El Dorado Palm Springs, Ltd. v. City of Palm Springs* (2002) 96 Cal.App.4th 1153, 1161 [118 Cal.Rptr.2d 15].)

■ On its face, we find nothing in the language of section 758.5 that requires an insurer to pay 100 percent of the reasonable repair costs irrespective of where the vehicle is taken. Indeed, contrary to plaintiff's claim, the statute specifically provides that the only time the insurer is required to pay 100 percent of the repair costs is when the insured accepts the insurer's recommendation to take the vehicle to a specific shop. Under those circumstances, "the insurer shall cause the damaged vehicle to be restored to its condition prior to the loss at no additional cost to the claimant other than as stated in the policy or as is otherwise allowed by law."[7] (§ 758.5, subd. (b)(2).) If the Legislature had intended to require insurers to pay 100 percent of a vehicle's repair cost regardless of whether the insured took the vehicle to a recommended shop, it would have expressly said so. The absence of such a provision requires that we reject as unsupported plaintiff's contention that section 758.5 requires insurers to pay 100 percent of the reasonable repair costs incurred at any facility of the insured's choice.

In addition, the complaint alleges conclusions but no facts to support a finding that the reduced rate of coverage was based on the amount that would have been charged by RSVP shops. This factual omission is fatal to the complaint. (*Blumhorst v. Jewish Family Services of Los Angeles, supra,* 126

---

[7] Plaintiff acknowledged at oral argument that the "other than as stated in the policy" language refers to the insured's deductible.

Cal.App.4th at p. 999 [" ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." ' "].)

### III. *Leave to Amend Was Properly Denied*

Plaintiff contends that the trial court abused its discretion by denying leave to amend. He argues that he is entitled to conduct discovery as to whether the reduced rate of coverage was based on the amount that would have been charged by RSVP shops. He states that because he "suspect[s] that Infinity's expected price of repair at an R.S.V.P. shop is roughly proportionate to the discount it takes off the price charged by non-R.S.V.P. shops," he should be granted discovery to prove his claim.

Infinity responds that "[e]ven if Maystruk could prove such a coincidence, it would remain undisputed that his benefit amount was precisely that set in advance by his contract, and did not depend on any unexpected, after-the-fact pricing decision of any RSVP shop." We agree. There is nothing in the policy language or the pleading allegations to suggest that the policy's reduced, flat rate of coverage for repairs performed by non-RSVP shops was based on the various amounts charged by RSVP shops for *future unknown* repairs that *might* be needed after the policy was issued. Although plaintiff suspects such a correlation exists, we are not persuaded that his suspicion is reasonable under the circumstances.

In his reply brief, plaintiff further argues that discovery might show that "Infinity sets the reasonable value [of repairs] through its estimate and the R.S.V.P. shop is contractually required to accept said estimate. Infinity can then go to a non-R.S.V.P. [shop] with the same estimate and then take a twenty percent (20%) discount. This would then violate Section 758.5." However, this is not a new legal theory based on facts previously alleged in the complaint, but one based on mere *suspicions* regarding the calculation (or miscalculation) of reasonable repair costs. Accordingly, plaintiff has failed to establish that the denial of leave to amend was an abuse of discretion.

### IV. *UCL Claim*

Plaintiff also contends that the trial court erroneously sustained the demurrer on the ground that a section 758.5 violation cannot provide a proper basis for a UCL claim. We need not reach this issue, however, which was rendered moot by our determination that the complaint failed to allege a section 758.5 violation.

## DISPOSITION

The judgment is affirmed. The appeal is dismissed as to Irina Maystruk, who is not a party to this action. Infinity is awarded its costs on appeal.

Willhite, Acting P. J., and Manella, J., concurred.