Filed 12/14/21  Nelson v. Santa Barbara County Sheriff's Office CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| WANDA NELSON,<br><br>   Plaintiff and Appellant,<br><br>v.<br><br>SANTA BARBARA COUNTY SHERIFF'S OFFICE et al.,<br><br>   Defendants and Respondents. | 2d Civil No. B308778<br>(Super. Ct. No. 19CV06081)<br>(Santa Barbara County) |

     Wanda Nelson purports to appeal from an order sustaining a demurrer to her first amended complaint (complaint) without leave to amend.  This is the third appeal involving appellant.  In the first appeal, we reversed her conviction of involuntary manslaughter.  (*People v. Nelson* (Nov. 6, 2017, B271618) [nonpub. opn].)  The conviction was based on the theory that appellant had been criminally negligent in leaving unattended a paralyzed patient (Heidi Good) who was under her care.  According to this theory, appellant was absent when Good's

ventilator became disconnected. Since no one was present to reconnect the ventilator, Good died from asphyxiation.

The jury acquitted appellant of first and second degree murder. It rejected the People's theory that she had intentionally disconnected the ventilator. We concluded that the evidence was insufficient to support her conviction of involuntary manslaughter because there was no substantial evidence of criminal negligence.

In the second appeal, we reversed the trial court's order finding appellant factually innocent of the murder of Heidi Good. (*People v. Nelson* (May 22, 2019, B290806) [nonpub. opn.].) We held: "Reasonable cause exists to believe that [appellant] intentionally killed Heidi by disconnecting the ventilator." (*Id.* at p. 13.)

Appellant subsequently filed a complaint against the Santa Barbara County Sheriff's Office (sheriff), District Attorney's Office (district attorney), and three employees of these offices. The present appeal arises from this action. The defendants are hereafter collectively referred to as respondents. The complaint alleged five causes of action: malicious prosecution, intentional infliction of emotional distress, negligence, false arrest/false imprisonment, and violation of the Bane Act (Civil Code § 52.1). Appellant sought general and punitive damages.

After the trial court ordered that respondents' demurrer be sustained without leave to amend, a judgment of dismissal was not entered. We construe the order as incorporating a judgment of dismissal, treat the appeal as taken from that judgment, and affirm.[1]

_____

[1] In the notice of appeal, appellant placed an "x" in a box indicating that she was appealing from a "[j]udgment of dismissal

*Factual Background*

The underlying facts are complex. They are set forth at length in our two prior unpublished opinions. There is no need to repeat them here.

*Prior Federal Action*

Before filing the present action, appellant filed an action against respondents in the United States District Court for the Central District of California. Appellant's federal complaint alleged a violation of her civil rights under section 1983 of Title 42 of the United States Code (section 1983). It also alleged claims under California law. In October 2019 the district court granted respondents' motion for summary judgment as to the section 1983 cause of action. The court declined to exercise jurisdiction over appellant's state claims. It dismissed the state claims without prejudice. Appellant asserts, "The Ninth Circuit Court of Appeal[s] affirmed the Order of the District Court on February 12, 2021."

*Standard of Review*

"A demurrer tests the legal sufficiency of factual allegations in a complaint. [Citation.] A trial court's ruling sustaining a

---

after an order sustaining a demurrer." But the record on appeal does not contain a judgment of dismissal, and the register of actions shows that no such judgment was entered. "An order sustaining a demurrer is not appealable absent an order dismissing the complaint. Although there is no order dismissing the . . . complaint, [respondents have] not requested dismissal of this appeal. Because the case has been fully briefed . . . , we deem the order sustaining the demurrer[] to incorporate a judgment of dismissal . . . ." (*Lucas v. Santa Maria Public Airport Dist.* (1995) 39 Cal.App.4th 1017, 1022.)

3

demurrer is erroneous if the facts alleged by the plaintiff state a cause of action under any possible legal theory.  [Citations.]" (*Lee Newman, M.D., Inc. v. Wells Fargo Bank* (2001) 87 Cal.App.4th 73, 78.)

"[W]e apply the de novo standard of review in an appeal following the sustaining of a demurrer . . . ." (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.)  "[W]e assume the truth of all facts properly pleaded in the complaint and its exhibits or attachments, as well as those facts that may fairly be implied or inferred from the express allegations.  [Citation.]  'We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law.'  [Citation.]" (*Cobb v. O'Connell* (2005) 134 Cal.App.4th 91, 95.)  "We . . . consider matters that may be judicially noticed . . . ." (*Brown v. Deutsche Bank National Trust Co.* (2016) 247 Cal.App.4th 275, 279.)

When "a demurrer has been sustained without leave to amend, unless failure to grant leave to amend was an abuse of discretion, the appellate court must affirm the judgment if it is correct on any theory.  [Citations.]  If there is a reasonable possibility that the defect in a complaint can be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend.  [Citation.]  The burden is on the plaintiff . . . to demonstrate the manner in which the complaint might be amended." (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.)

*Plaintiff's Burden on Appeal*

On appeal "[t]he plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer, and if the defendant

4

negates any essential element, we will affirm the order sustaining the demurrer as to the cause of action. [Citation.]" (*Martin v. Bridgeport Community Assoc., Inc.* (2009) 173 Cal.App.4th 1024, 1031 (*Martin*); see also *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 880 ["Cantu bears the burden of overcoming *all* of the legal grounds on which the trial court sustained the demurrers"].)

*First Cause of Action for Malicious Prosecution*

"A plaintiff must plead and prove three elements to establish the tort of malicious prosecution: a lawsuit '(1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice.'" (*Nunez v. Pennisi* (2015) 241 Cal.App.4th 861, 872-873.)

The first cause of action for malicious prosecution is against two deputy sheriffs – Charlie Bosma and Matthew Fenske – and Deputy District Attorney Cynthia Gresser. The complaint alleged that they had "intentionally fabricated evidence and produced false and misleading evidence," ignored and suppressed exculpatory evidence, and "intentionally and deliberately exhibited racial bias in their enforcement of the law to further their personal agendas against low-income, persons of color, such [as] this African-American plaintiff . . . ."

The trial court ruled, "The cause of action for malicious prosecution is barred by the absolute immunity set forth in Government Code section 821.6" (section 821.6), which provides, "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

5

The immunity granted by section 821.6 applies to a public prosecutor. (*Miller v. Filter* (2007) 150 Cal.App.4th 652, 666 (*Miller*).) "The immunity is absolute, applying even if the prosecutor 'acts maliciously and without probable cause' [citations], such as by concealing exculpatory evidence [citation]." (*Ibid.*) "Persons appointed as deputy district attorneys must be free to vigorously enforce the law without concerns over the possibility of subsequent damage claims against them." (*Id.* at p. 668.) The immunity also applies to a police officer or deputy sheriff. (*Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, 752 (*Asgari*) ["Under California law, a police officer is granted statutory immunity from liability for malicious prosecution"].) "California courts construe section 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits." (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1048 (*Gillan*).)

Appellant "characterizes this case [as] an 'intentional violation of her state constitutional and statutory civil rights to be free from racial and ethnic discrimination.'" She contends, "[T]o the extent that [her] malicious prosecution claim is based on her contention that she was targeted . . . based upon her race, [respondents] cannot be immune." In support of her contention, appellant cites a dissenting opinion in which Justice Grignon said, "Defendants [senior commanders in the Los Angeles Police Department] owe a duty to plaintiffs to refrain from racial and ethnic discrimination and are not immune from liability for such discrimination." (*Gates v. Superior Court* (1995) 32 Cal.App.4th 481, 526 (dis. opn. of Grignon, J.).) But the case in which Justice Grignon wrote her dissenting opinion did not involve a charge of

malicious prosecution or the interpretation of section 821.6. The statute in question was Government Code section 845, which immunizes a public entity or a public employee from the payment of monetary damages for failure to provide adequate police protection. Contrary to Justice Grignon's dissent, the majority opinion held that, despite the complaint's allegation of "an ongoing deliberate racially based misallocation of police resources," the "[d]efendants are immune from civil liability for money damages for failing to provide adequate police protection against participants in criminal conduct during a riot." (*Gates, supra,* at p. 494.) The majority concluded that the application of section 845 to plaintiffs did not violate their equal protection rights.[2] (*Gates, supra,* at pp. 513-516.)

Accordingly, appellant has failed to carry her burden of "overcoming . . . the legal ground[] on which the trial court

------

[2] For the first time in her reply brief, appellant contends that "Government Code § 821.6 is unconstitutional" to the extent it grants "absolute immunity to prosecutors and law enforcement officers who commit bad acts with malice." The contention is forfeited because it is not supported by meaningful argument with citation to authority. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.) It is also forfeited because appellant has not shown good cause for failing to raise the issue in her opening brief. "[W]e do not consider points raised for the first time in the reply brief absent a showing of good cause for the failure to present them earlier. [Citations.] This rule is based on considerations of fairness—withholding a point until the closing brief deprives the opposing party of the opportunity to file a written response unless supplemental briefing is ordered." (*Ibid.*)

sustained the demurrer" on the first cause of action for malicious prosecution. (*Martin, supra,* 173 Cal.App.4th at p. 1031.)

*Fourth Cause of Action for False Arrest/False Imprisonment*

Appellant claims that the trial court "erred in sustaining [her] cause of action for false arrest/false imprisonment without leave to amend." (Capitalization and bold omitted.) "''[F]alse arrest" and "false imprisonment" are not separate torts. False arrest is but one way of committing a false imprisonment . . . .'" (*Asgari, supra,* 15 Cal.4th at p. 752, fn. 3.) "The tort of false imprisonment is the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short. . . . In California a cause of action for false imprisonment will lie . . . where there has been an unlawful arrest followed by imprisonment . . . ." (*City of Newport Beach v. Sasse* (1970) 9 Cal.App.3d 803, 810.) "Under California law, a police officer is granted statutory immunity from liability for malicious prosecution [§ 821.6], but not for false arrest and imprisonment." (*Asgari, supra,* at p. 752.)

In the fourth cause of action for false arrest/false imprisonment, appellant alleged that Fenske, Bosma and Gresser had "deprived [her] of her liberty without justification" because they had "detained [her] without reasonable suspicion and arrested her[] without probable cause." Appellant further alleged that the sheriff and district attorney "are vicariously liable for the wrongful acts of Fenske, Bosma and Gresser."

The grand jury returned an indictment charging appellant with premeditated murder. Based on the indictment, the court issued a bench warrant for appellant's arrest. (Pen. Code, §§ 945, 979, 981.) The warrant "commanded" law enforcement officers to

8

"forthwith" arrest appellant. (*Id.*, § 981.) They did not have discretion to disobey this command.

In its ruling sustaining the demurrer, the trial court stated: "[Fenske's, Bosma's and Gresser's] involvement in obtaining [appellant's] arrest was limited to their actions in presenting evidence to the Grand Jury; none of them were physically involved in [appellant's] actual arrest pursuant to the warrant, which was effectuated by law enforcement officers of the State of New York." The court concluded, "Under these circumstances, it appears clear that no false arrest/false imprisonment cause of action can legally be stated against defendants, and that the true cause of action which the allegations support is malicious prosecution, which is barred by the absolute immunity provided by Government Code section 821.6."

At the hearing on respondents' demurrer, appellant's counsel stated: "Detective Fenske and Bosma did actually travel to New York to arrest [appellant]." Counsel requested permission to amend the complaint to allege this fact. Counsel did not explain why the result would be different if Fenske and Bosma had arrested appellant. The warrant commanded any law enforcement officer to make the arrest. (Pen. Code, § 981.)

The trial court did not abuse its discretion in denying permission to amend the complaint. Because the arrest was made pursuant to a valid arrest warrant based on a grand jury indictment, respondents cannot be liable for false imprisonment. ""The distinction between [malicious prosecution and false imprisonment] lies in the existence of valid legal authority for the restraint imposed. If the defendant complies with the formal requirements of the law, as by swearing out a valid warrant, so that the arrest of the plaintiff is legally authorized, . . . [h]e is . . .

9

liable, if at all, only for a misuse of legal process to effect a valid arrest for an improper purpose. The action must be for malicious prosecution, upon proof of malice and want of probable cause . . . ." . . .'" (*Collins v. City and County of San Francisco* (1975) 50 Cal.App.3d 671, 677 (*Collins*); see also *Scannell v. County of Riverside* (1984) 152 Cal.App.3d 596, 608 ["Because the claim of false imprisonment rests upon the allegedly invalid obtaining of an arrest warrant and subsequent detention, the offense is malicious prosecution, not false imprisonment. [Citation to *Collins*.] Hence, we conclude that the county's demurrer for failure to state a cause of action for false imprisonment was properly sustained without leave to amend"].)

*Third Cause of Action for Negligence*

The third cause of action for negligence is against all respondents. It alleged that they had negligently investigated Heidi Good's death and negligently prosecuted appellant. It also alleged that the district attorney and sheriff had "breach[ed] duties imposed by California Government Code § 815.6 [section 815.6] by not properly screening, hiring, training, testing, monitoring, supervising, disciplining or investigating potential misdeeds of" deputy district attorneys and deputy sheriffs.

Negligence Based on Violation of

Mandatory Duty under Section 815.6

The trial court ruled that appellant had failed to state a cause of action for negligence against the district attorney and sheriff based on the violation of a mandatory duty under section 815.6, which provides, "Where a public entity is under *a mandatory duty imposed by an enactment* that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by

10

its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (Italics added.) In explaining its ruling on the section 815.6 issue, the trial court said: "[Appellant] has failed to establish any enactment which is sufficient to support a claim for mandatory duty liability . . . ."

"[S]ection 815.6 has three elements that must be satisfied to impose public entity liability: (1) a mandatory duty was imposed on the public entity by an enactment; (2) the enactment was designed to protect against the particular kind of injury allegedly suffered; and (3) the breach of the mandatory statutory duty proximately caused the injury." (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 179.) Appellant has not shown that the three elements of section 815.6 were satisfied. The trial court therefore did not err in sustaining the demurrer on the third cause of action's claim of negligence based on the district attorney's and sheriff's failure to discharge a mandatory duty under section 815.6.

Negligence Based on Acts of Gressor, Fenske, and Bosma

As to the alleged negligence of Gressor, Fenske, and Bosma, the trial court ruled, "Courts have repeatedly held that [section 821.6] bars actions for negligence arising from the same alleged acts as those supporting a malicious prosecution claim, as is present here, requiring a finding that they are immune from such liability." The court did not err. (*Johnson v. City of Pacifica* (1970) 4 Cal.App.3d 82, 86-88 [section 821.6 grants immunity to law enforcement officers accused of negligently investigating criminal charges].) It follows that the district attorney and sheriff are not vicariously liable for the alleged negligence of their employees. (Gov. Code, § 815.2, subd. (b) ["Except as otherwise

provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability"].  In *Leon v. County of Riverside* (2021) 64 Cal.App.5th 837, 848 (*Leon*), the court held that under sections 815.2 and 821.6 "the deputies and the county are immune from liability to [victim's wife] for the deputies' negligence, if any, in leaving [victim's] body exposed while the deputies . . . investigated the shooting [of victim]." Immunity applied because "[u]ndisputed evidence shows that the deputies' negligence, if any, occurred during the course of the deputies' official investigation of the shooting."  (*Leon, supra*, at p. 842.)

Interpretation of Section 821.6: Conflict between<br>Ninth Circuit and California Court of Appeal

On August 18, 2021, our Supreme Court granted review in *Leon, supra*, 64 Cal.App.5th 837 (S269672).  According to the Supreme Court's news release dated August 20, 2021, *Leon* "presents the following issue: Is immunity under Government Code section 821.6 limited to actions for malicious prosecution? (See *Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710 [(*Sullivan*)].)"[3]  In the order granting review, the Supreme Court stated: "Pending review, the opinion of the Court of Appeal . . . may be cited, not only for its persuasive value, but also for the limited purpose of establishing the existence of a conflict in authority that would in turn allow trial courts to exercise discretion under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456, . . . to choose between sides of any such

---

[3] <https://www.courts.ca.gov/documents/ws081621.pdf> [as of Sept. 23, 2021], archived at <https://perma.cc/8M88-7DED>.

conflict." (*Leon v. County of Riverside* (2021) __ Cal.5th __ [2021 Cal.LEXIS 5829].)

In a concurring opinion in *Leon*, Court of Appeal Justice Raphael explained the conflict referred to by the Supreme Court. Justice Raphael noted that there are two different interpretations of section 821.6 immunity. "[T]he current law in California [Ninth Circuit] federal courts is that section 821.6 provides absolute immunity only against malicious prosecution claims . . . ." (*Leon*, *supra*, 64 Cal.App.5th at p. 860 (conc. opn. of Raphael, J.).) The Ninth Circuit's interpretation of section 821.6 is based on *Sullivan*, *supra*, 12 Cal.3d 710. (See *Sharp v. County of Orange* (9th Cir. 2017) 871 F.3d 901, 920-921 [in *Sullivan* "the California Supreme Court held that § 821.6 immunity does not extend beyond malicious-prosecution claims"]; *Garmon v. County of Los Angeles* (9th Cir. 2016) 828 F.3d 837, 847 ["Because the California Supreme Court has already spoken on this issue, we follow *Sullivan* and we reverse and hold that the district court erred in dismissing the state law claims against County Defendants because the claims against them are not malicious prosecution claims"].) The Ninth Circuit's narrow reading of *Sullivan* is based on the following passages from that opinion: "[T]he history of section 821.6 demonstrates that the Legislature intended the section to protect public employees from liability *only* for malicious prosecution and not for false imprisonment." (*Sullivan*, *supra*, 12 Cal.3d at p. 719, italics added, other italics omitted.) "Our narrow interpretation of section 821.6's immunity, *confining its reach to malicious prosecution actions*, finds corroboration in another governmental immunity provision, [Government Code] section 820.4." (*Id.* at p. 721, italics added.)

13

The California Court of Appeal has not adopted the Ninth Circuit's interpretation of *Sullivan*. It "has justified applying section 821.6 absolute immunity to torts other than malicious prosecution." (*Leon, supra*, 64 Cal.App.5th at p. 860 (conc. opn. of Raphael, J.).) The majority opinion in *Leon* concluded: "In *Sullivan*, our Supreme Court specifically addressed whether section 821.6's immunity applied to claims for false imprisonment *in addition to* claims for malicious prosecution. [Citation.] In holding that section 821.6 did not immunize public employees from claims for false imprisonment, the court reasoned that section 821.6 could not be interpreted to defeat another common law rule, preserved in [Government Code] section 820.4, that public employees are *not immune* from liability for false arrest or false imprisonment. [Citation.] *Sullivan* was not concerned with, and did not address, whether section 821.6's immunity for malicious prosecution extended to torts committed by public employees during the course of official investigations related to judicial or administrative proceedings." (*Id.* at p. 854.)

"With some reluctance," Justice Raphael joined the majority opinion. (*Leon, supra*, 64 Cal.App.5th at p. 862 (conc. opn. of Raphael, J.).) He reasoned: "[T]he body of Court of Appeal precedent . . . states the current law in the courts of this state." (*Ibid.*) The majority opinion "correctly articulates the reasoning of decades of [California Court of Appeal] opinions that . . . have expanded section 821.6's absolute immunity to police officer conduct in investigations." (*Id.* at p. 863.) "I believe that any correction to the Court of Appeal's decades-old, expansive application of section 821.6 will have to come from our Supreme Court, rather than from us." (*Id.* at p. 864.) We agree and note that the text of section 821.6 contain no words of limitation.

14

We also agree with the majority in *Leon* that our Supreme Court in *Sullivan* held only that section 821.6's grant of immunity does not apply to actions for false imprisonment. (See *Sullivan, supra,* 12 Cal.3d at p. 722 ["Since section 821.6 cannot be interpreted to defeat the common law liability for false imprisonment preserved in section 820.4, the county sheriff remains liable for his alleged knowing imprisonment of appellant"].)

*Second Cause of Action for Intentional*
*Infliction of Emotional Distress*

In the second cause of action, appellant alleged that Fenske, Bosma and Gresser had "willfully and intentionally caused [her] emotional distress" by committing the same acts alleged in the first cause of action for malicious prosecution and the fourth cause of action for false imprisonment. As explained above in the section on the cause of action for false imprisonment, *ante* at pp. 8-9, the acts underlying that cause of action constitute malicious prosecution, not false imprisonment. Thus, the trial court correctly ruled that section 821.6 immunized respondents from liability on the second cause of action for intentional infliction of emotional distress. (See *Miller, supra,* 150 Cal.App.4th at p. 670 [section 821.6 "immunity applies to every cause of action alleged in plaintiffs' complaint, because all arose out of the individual defendants' charging decisions and prosecution of the criminal action against [plaintiffs]"]; *Leon, supra,* 64 Cal.App.5th at p. 854 ["the appellate courts have consistently interpreted section 821.6 as not being limited to claims for malicious prosecution, but as extending to other torts, including . . . intentional infliction of emotional distress"]; *Gillan, supra,* 147 Cal.App.4th at p. 1050 ["defendants are immune from

15

liability for . . . intentional infliction of emotional distress . . . pursuant to Government Code section 821.6"].)

*Fifth Cause of Action for Violation of the Bane Act*

The fifth cause of action is against all respondents. It is based on alleged violations of Civil Code section 52.1 (section 52.1), known as "the Tom Bane Civil Rights Act" (Bane Act). (§ 52.1, subd. (a).) Section 52.1, subdivision (c) provides, "Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, . . . may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages . . . ." The proscribed interference encompasses "interfere[nce] by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion." (*Id.*, subd. (b).) "[S]ection 52.1 . . . require[s] an attempted or completed act of interference with a legal right, accompanied by a form of coercion." (*Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 334.) The fifth cause of action lists multiple rights with which respondents allegedly interfered.

Appellant claims that respondents are not entitled to immunity on the Bane Act cause of action because "[t]his case involves more than a simple false arrest. Appellant has also alleged that her arrest was in violation of her Fourteenth Amendment rights because it follows a pattern of conduct by the Respondents[] of racial profiling."

Because the Bane Act cause of action "is based on statute, the general rule that statutory causes of action must be pleaded with particularity is applicable." (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795.) "'[T]he plaintiff must set

16

forth facts in his complaint sufficiently detailed and specific to support an inference that each of the statutory elements of liability is satisfied. General allegations are regarded as inadequate. [Citations.]'" (*Shields v. County of San Diego* (1984) 155 Cal.App.3d 103, 112.) Appellant's claim of racial profiling is a general, conclusory allegation. She does not allege facts from which racial profiling may be inferred. It may not be inferred from the mere fact that, as she states in her opening brief, she was "the only African-American in the scenario." (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318, italics added ["'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or *conclusions of fact or law* . . .'"]; *Maystruk v. Infinity Ins. Co.* (2009) 175 Cal.App.4th 881, 888 ["the complaint alleges conclusions but no facts to support [them] . . . . This factual omission is fatal to the complaint"].)

In sustaining the demurrer to the Bane Act cause of action, the trial court did not rule that the cause of action was fatally flawed because it consisted of conclusory allegations devoid of factual support. The court ruled: "With respect to [appellant's] Bane Act claim based upon the alleged violation of her Fourteenth Amendment rights, those relate to the acts taken to institute and prosecute the criminal action against [her]. . . . [A]ll such claims made under the Bane Act . . . are . . . barred by the absolute immunity set forth in Section 821.6."

Appellant has not carried her burden of showing that the trial court erred. In *County of Los Angeles v. Superior Court* (2009) 181 Cal.App.4th 218, 231, the court "reject[ed] plaintiffs' contention that Civil Code section 52.1 prevails over the Government Code section 821.6 immunity." The rejection was based on *O'Toole v. Superior Court* (2006) 140 Cal.App.4th 488.

17

There, the appellate court reasoned: "[U]nder California law '[i]t is generally recognized that a statutory governmental immunity overrides a statute imposing liability.' [Citations.] Thus, absent 'a clear indication of legislative intent that statutory *immunity* is *withheld or withdrawn,*' a specific statutory immunity [such as section 821.6] applies to shield a public employee from liability imposed by a particular statute. [Citations.] On our examination of Civil Code section 52.1, we have found no indication the Legislature intended to create an exception to the general rule. Civil Code section 52.1 contains no indicia reflecting an intent that public employees may be sued despite a statutory immunity that would otherwise apply." (*Id.* at p. 504.)

"Here, all of the acts of which [appellant] complain[s] were triggered by allegations of criminal activity and were part of the investigation and prosecution process, . . . and so they are immunized by Government Code section 821.6." (*County of Los Angeles v. Superior Court, supra*, 181 Cal.App.4th at 230.) "Stated otherwise, [appellant] allege[s] violations of [her] civil rights by *malicious prosecution,* i.e., initiating prosecution of another under lawful process but from malicious motives and without probable cause. [Citation.] That is, the specific conduct [appellant] alleges is exactly that which Government Code section 821.6 was designed to immunize." *(Id.* at pp. 231-232.)

*Disposition*

The judgment of dismissal is affirmed. Respondents shall recover their costs on appeal.

18

NOT TO BE PUBLISHED.

                              YEGAN, Acting P. J.

We concur:


        PERREN, J.


        TANGEMAN, J.

19

Colleen K. Sterne, Judge

Superior Court County of Santa Barbara

_____

Law Offices of Michael J. Curls, Michael J. Curls and Nichelle D. Jordan, for Plaintiff and Appellant.

Rachel Van Mullem, County Counsel, Mary Pat Barry, Snr. Deputy, for Defendants and Respondents.